```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA
```

ELLIOTT D. WORKMAN,            )
                               )
            Plaintiff,         )
                               )
v.                             )      Case No. CIV-15-196-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

**OPINION AND ORDER**

Plaintiff Elliott D. Workman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 6, 1970 and was 43 years old at the time of the ALJ's decision. Claimant completed his high school education and some vocational training. Claimant has worked in the past as a drill press operator. Claimant alleges an inability to work beginning September 2, 2008 due to limitations resulting from sleep apnea, gout, obesity, and a shoulder injury.

3

**Procedural History**

On August 1, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 2, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Edmund C. Werre by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. He issued an unfavorable decision on January 21, 2014. The Appeals Council denied review of the ALJ's decision on March 23, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination; and (2) finding Claimant could perform other jobs at step five.

4

## RFC Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative joint disease of the left shoulder status post humerus fracture, gout, obesity, and sleep apnea. (Tr. 12). The ALJ determined Claimant retained the RFC to perform sedentary work. (Tr. 13). In so doing, the ALJ determined Claimant could lift up to 20 pounds occasionally and lift or carry up to 10 pounds frequently, standing/walking six hours in an eight hour workday, sitting six hours out of an eight hour workday, no overhead reaching with the left non-dominant upper extremity or work requiring more than 40 degrees flexion and 50 degrees abduction with the left upper extremity. (Tr. 13).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of printed circuit board screener, addresser, and silverware assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 19). As a result, the ALJ determined Claimant was not under a disability from September 2, 2008 through the date of the decision. Id.

Claimant first contends the ALJ did not properly weigh and assess the opinion of his treating physician, Dr. Donald C. Ewing. Dr. Ewing authored a medical source statement dated October 28, 2013. He limited Claimant to lifting/carrying 20 pounds

occasionally and less than 10 pounds frequently; stand/walk for at least two hours in an eight hour workday; sit for less than about six hours in an eight hour workday; and limited pushing and pulling in the upper extremities. The medical/clinical findings to support these conclusions is not completely legible but includes Claimant's surgery on his shoulder and the fact he still experiences pain with activity involving the shoulder. (Tr. 533-34).

Dr. Ewing also found Claimant should never climb, kneel, or crawl and only occasionally crouch. The basis for this finding was Claimant's morbid obesity. (Tr. 534).

Dr. Ewing continued on the form to find Claimant's reaching in all directions and handling were limited. Fingering was not limited as long as Claimant was sitting and feeling was unlimited. The clinical basis was Claimant's inability to lift his arm. (Tr. 535). Claimant was also found by Dr. Ewing to be limited in exposure to noise, dust, and hazards such as machinery and heights. Id.

The ALJ acknowledged the opinion in his decision and gave it "little weight." The stated basis for doing so included the ALJ's inability to discern the identity of the author of the source statement and that some of the limitations contained in the statement are more restrictive than the medical evidence supported. (Tr. 17).

6

Defendant appears to admit that the source statement was written by Dr. Ewing. The signature supports such a conclusion. Because of this confusion by the ALJ, he expressly did not know that he was evaluating the opinion of a treating physician under the controlling weight standard.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

7

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall give due consideration to Dr. Ewing's opinion as a treating physician. Additionally, considerable support is present in the medical record for limitations in the use of his upper extremity. (Tr. 238, 247, 305, 328-29, 370, 380, 503, 566, 587). The ALJ shall consider this medical evidence in evaluating the weight to be afforded Dr. Ewing's source statement.

Claimant also asserts the ALJ should have found some

8

functional limitation from his sleep apnea, gout, arthritis, and obesity. The ALJ cited to various medical records which indicated that these conditions did not pose a significant limitation upon his ability to function or were treated effectively. (Tr. 15-17). He also made the required findings to demonstrate he considered Claimant's obesity and the combined effects it had upon other conditions. (Tr. 13).

Claimant also challenges the credibility findings made by the ALJ. The ALJ found Claimant's statements were not "entirely credible." (Tr. 14). Other than reciting the medical findings during Claimant's visits to medical professionals and the findings of the consultative examiners as well as Claimant's testimony on his activities of daily living, the ALJ did not link the facts of record with any conflicts with the medical record.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  On remand, the ALJ shall specifically consider Claimant's statements and affirmatively link his findings to the record.

### Step Five Evaluation

Claimant contends the ALJ failed to include all of his limitations in his RFC findings and, in turn, failed to include the

restrictions in his hypothetical questions to the vocational expert. Since the ALJ must re-evaluate Dr. Ewing's source statement and Claimant's credibility, he shall also reconsider his RFC and questions posed to the vocational expert and insure that they contain the totality of Claimant's functional limitations.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 8th day of September, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE